UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ROBERT A. COUSINS,**

    *Plaintiff,*

v.                                                **Civil Action No._____**
                                                **Jury Trial Demanded**

**NOCC SHIPOWNING AS,**
**NORWEGIAN CAR CARRIERS AS,**
**WALLEM SHIPMANAGEMENT LIMITED,**
**HYUNDAI GLOVIS CO., LTD.,**

**and**

**M/V GLOVIS COMPANION, Her engines, tackle,**
**equipment, and appurtenances,** *in rem***,**

    *Defendants.*

## **VERIFIED COMPLAINT**

**ROBERT A. COUSINS**, ("Cousins" or "Plaintiff,") by counsel, hereby moves this Honorable Court for a judgment, award, and execution jointly and severally against **NOCC SHIPOWNING AS, NORWEGIAN CAR CARRIERS AS, WALLEM SHIPMANAGEMENT LIMITED, and HYUNDAI GLOVIS CO., LTD.,** and the vessel **M/V GLOVIS COMPANION**, her engines, tackle, equipment, and appurtenances, *in rem*, ("Vessel")(collectively, "Defendants,") jointly and severally, together with interest and costs incident to this proceeding for the reasons set forth below.

1

## THE PARTIES, JURISDICTION AND VENUE

1. The Court has jurisdiction over all *in personam* claims in this action pursuant to 28 U.S.C. § 1332 diversity of citizenship and/or alienage in that:

    a. **Robert A. Cousins**, Plaintiff, is a resident of and citizen of the Commonwealth of Virginia.

    b. Defendant **NOCC Shipowning AS** was at all relevant times:

        i. A corporation or other legal business entity incorporated, formed, or created under the laws of a foreign country and having its principal place of business in a foreign country, and upon information and belief is not registered to conduct business in the Commonwealth of Virginia;

        ii. The registered owner, beneficial owner. demise charterer, or bareboat charterer of M/V GLOVIS COMPANION but, upon information and belief, is the registered owner of the Vessel;

        iii. An entity operating, managing, or controlling M/V GLOVIS COMPANION;

        iv. The ISM Manager, the Vessel Manager, or the Commercial Manager of M/V GLOVIS COMPANION; and

        v. Acting through its employees, agents, servants, or representatives to hire the master, officers, and crew of M/V GLOVIS COMPANION; and

        vi. An entity which contracted with Maryland Pilots Association for the provision of pilotage services to pilot M/V GLOVIS COMPANION through Maryland and Virginia waters from Baltimore to the Atlantic Ocean via the Chesapeake Bay on or about June 30, 2018.

      c.      Defendant **Norwegian Car Carriers AS** was at all relevant times:

      i.      A corporation or other legal business entity incorporated, formed, or created under the laws of a foreign country and having its principal place of business in a foreign country, and upon information and belief is not registered to conduct business in the Commonwealth of Virginia;

      ii.      The registered owner, beneficial owner. demise charterer or bareboat charterer of M/V GLOVIS COMPANION;

      iii.      An entity operating, managing, or controlling M/V GLOVIS COMPANION;

      iv.      The ISM Manager, the Vessel Manager or the Commercial Manager of M/V GLOVIS COMPANION; and

      v.      Acting through its employees, agents, servants, or representatives to hire the master, officers, and crew of M/V GLOVIS COMPANION; and

      vi.      An entity which contracted with Maryland Pilots Association for the provision of pilotage services to pilot M/V GLOVIS COMPANION through Maryland and Virginia waters from Baltimore to the Atlantic Ocean via the Chesapeake Bay on or about June 30, 2018.

      d.      Defendant **Wallem Shipmanagement Limited** was at all relevant times:

      i.      A corporation or other legal business entity incorporated, formed, or created under the laws of a foreign country and having its principal place of business in a foreign country, and upon information and belief is not registered to conduct business in the Commonwealth of Virginia;

    ii. The registered owner, beneficial owner. demise charterer or bareboat charterer of M/V GLOVIS COMPANION;

    iii. An entity operating, managing, or controlling M/V GLOVIS COMPANION;

    iv. The ISM Manager, the Vessel Manager, or the Commercial Manager of M/V GLOVIS COMPANION; and

    v. Acting through its employees, agents, servants, or representatives to hire the master, officers, and crew of M/V GLOVIS COMPANION; and

    vi. An entity which contracted with Maryland Pilots Association for the provision of pilotage services to pilot M/V GLOVIS COMPANION through Maryland and Virginia waters from Baltimore to the Atlantic Ocean via the Chesapeake Bay on or about June 30, 2018.

  e. Defendant **Hyundai Glovis, Co., Ltd.** was at all relevant times:

    i. A corporation or other legal business entity incorporated, formed, or created under the laws of a foreign country and having its principal place of business in a foreign country, and upon information and belief is not registered to conduct business in the Commonwealth of Virginia;

    ii. The registered owner, beneficial owner. demise charterer or bareboat charterer of M/V GLOVIS COMPANION but upon information and belief was the charterer of the Vessel;

    iii. An entity operating, managing, or controlling M/V GLOVIS COMPANION;

    iv. The ISM Manager, the Vessel Manager, or the Commercial Manager of M/V GLOVIS COMPANION; and

    v. Acting through its employees, agents, servants, or representatives to hire the master, officers and crew of M/V GLOVIS COMPANION; and

    vi. An entity which contracted with Maryland Pilots Association for the provision of pilotage services to pilot the M/V GLOVIS COMPANION through Maryland and Virginia waters from Baltimore to the Atlantic Ocean via the Chesapeake Bay on or about June 30, 2018.

  f. **M/V GLOVIS COMPANION**, IMO No. 9460899, Call Sign V7AK9, is a 650-foot merchant ship designed to carry automobiles and other vehicles. M/V GLOVIS COMPANION sails under the flag of the Marshall Islands.

  g. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

  2. The Court also has jurisdiction over claims in this action pursuant to 28 U.S.C. § 1333 and the General Maritime Law because this maritime tort claim involves Plaintiff's injury caused by the Vessel while in navigation on the navigable waterways of the Commonwealth of Virginia within this judicial district.

  3. Venue in this Court is proper because all or substantially all actions and omissions giving rise to Plaintiff's claims occurred in this judicial district thereby satisfying the requirements of 28 U.S.C. § 1391(b)(2).

  4. Also, in the alternative, venue is proper in this Court because the Vessel GLOVIS COMPANION is now, or will be during the pendency of this action, within this judicial district or otherwise subject to the jurisdiction of this Court, and because the Owner, the Operator/Manager,

and the Charterer at all times relevant to Plaintiff's claims directed the actions of the Vessel and its officers and crew.

## FACTS

5. Mr. Cousins repeats, reiterates and realleges each allegation contained in the paragraphs above as if fully set forth herein at length.

6. On June 30, 2018, and at all times material to this action, Mr. Cousins worked as a deck hand on the pilot launch PATAPCO ("launch").

7. On that date, and at all times material to this action, Mr. Cousins worked in the course and scope of his employment as a seafarer on the pilot launch. Part of his duties were to assist the Pilot embarking or disembarking vessels such as M/V GLOVIS COMPANION.

8. At the time of his employment on June 30, 2018, and all times material to this action, Mr. Cousins was engaged in maritime employment.

9. At all times material to this action, Defendants owned, operated, chartered, managed, maintained, controlled, serviced, repaired, and inspected the Vessel and its equipment, including but not limited to the pilot's ladder that broke while the pilot descended from the Vessel.

10. At all times material to this action, Defendants controlled, directed, instructed, managed, and trained the officers and crew of the Vessel and were otherwise responsible in *respondeat superior* for their conduct.

11. On June 30, 2018, the pilot launch, with Mr. Cousins onboard, navigated towards Chesapeake channel buoys three and four to intercept the M/V GLOVIS COMPANION. The Vessel was headed outbound from the Chesapeake Bay but still within the territorial waters of the United States, specifically the territorial waters of the Commonwealth of Virginia.

12. The pilot launch maneuvered to the starboard side of the Vessel to recover Maryland Pilot Brian Fierro ("the Pilot"). The Pilot had been in navigational control of the Vessel in the scope of his duties as a pilot of the Association of Maryland Pilots. At about 5:25 pm, following completion of his duties, the Pilot was in the process of disembarking.

13. The Vessel was outfitted with a pilot transfer station on the starboard side. The Master of the Vessel gained navigational control and the Pilot proceeded to the Vessel's starboard pilot station to climb down the starboard pilot ladder to the pilot launch.

14. Mr. Cousins stood on the bow of the pilot launch to perform the duties expected of him during a pilot transfer. Mr. Cousins stood below the pilot transfer station on the GLOVIS, to ensure the safe positioning of the pilot's ladder and to act as a spotter for the Pilot as he descended to the launch.

15. To provide the Pilot a safe means of egress from the main deck onto the ladder, the crew of the GLOVIS positioned portable and removable stanchions on either side of the ladder. Stanchions are required to maintain balance as a pilot descends to the rope ladder.

16. While the Pilot grasped both stanchions to step onto the next rung of the ladder, the forward stanchion failed and broke into two parts. Once parted, the Pilot's feet were knocked off the ladder rungs and he dangled 20-25 feet off the starboard side of the Vessel. The Pilot held himself with one arm on the aft stanchion and attempted to rotate his body to regain his footing on the ladder. The motion of the ladder and the GLOVIS prevented him from ever regaining his footing. The Pilot's grasp on the left stanchion finally gave out and he fell.

17. Mr. Cousins reacted to prevent the Pilot from being crushed between the launch and the GLOVIS as he fell. Mr. Cousins reached up with his right hand to catch and pull the Pilot into the launch. Both men fell to the deck between the pilot launch's wheelhouse and her side rails.

18. As a result of the broken stanchion and the Pilot's fall onto Mr. Cousins, Mr. Cousins suffered severe injuries. The Pilot also suffered significant injuries. The pilot launch radioed to the Coast Guard and rushed to shore to meet an ambulance.

19. As a result of the incident, Plaintiff suffered serious injury which required surgery and significant medical care.

20. The incident rendered him unable to work and caused significant injury from which he will never recover.

21. As a result of the incident, Plaintiff suffered and will continue to suffer serious permanent injuries, including disability; Plaintiff incurred doctor's expenses and expenses of other health care providers and will continue to do so in the future; Plaintiff suffered great pain and suffering, anxiety and mental distress, inconvenience, and the loss of quality of life, including loss of consortium, and will continue to do so in the future; Plaintiff suffered loss of wages due to the injury and will continue to do so in the future, and suffered loss of earning capacity.

22. Plaintiff's injury and damages were proximately caused by the negligence of the Defendants, for which Defendants, one or all of them, jointly and severally, are responsible.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

23. Cousins repeats, reiterates and realleges each allegation contained in the paragraphs above as if fully set forth herein at length.

24. The General Maritime Law imposes liability against a vessel, *in rem*, and against the Vessel's owners and charterers, *in personam,* if a vessel commits a maritime tort.

25. At all relevant times, the Pilot was a business invitee aboard the M/V GLOVIS COMPANION, hired by agents, servants, or employees of the Defendants to perform pilotage services. It is settled principle of maritime law that a vessel owner/operator owes a duty to exercise reasonable care toward those lawfully aboard the vessel.

26. The embarkation and disembarkation of pilots is an important shipboard operation requiring utmost care and special procedures to ensure the safety of those involved.

27. It is well known in the maritime industry that embarkation and disembarkation of pilots can be hazardous. Accordingly, spotters are assigned on the piloted vessel and the pilot launch to assist with the transfer. They are each an important part of the transfer team.

28. The duty of care owed to a pilot and others involved in the transfer is heightened due to the critical nature of pilot transfer evolutions. In this case, Mr. Cousins, as a deckhand of the pilot launch responsible for accomplishing the pilot transfer, was a foreseeable participant of the critical shipboard operation of embarkation and disembarkation of pilots.

29. At all times relevant, Defendants were obligated to ensure the Vessel complied with the International Maritime Organization regulations and resolutions pertaining to pilot transfer operations. The maritime industry recognizes the care with which transfers must be made and has published guidance through the International Maritime Organization, including the Safety of Life

at Sea Convention ("SOLAS").

30. At all times relevant, the Pilot was a *Sieracki* seafarer as that term and status has been understood, entitling him to the General Maritime Law Warranty of Seaworthiness based on the recognition that pilots are exposed to the same maritime hazards and risks to which the crew of the GLOVIS are exposed. Mr. Cousins, as a deckhand of the pilot launch responsible for accomplishing the pilot transfer and actively engaged in the maritime trade, was foreseeably exposed to the hazard and risk of a broken pilot's ladder.

31. Defendant owed the Pilot and all participants of the pilot transfer a warranty of seaworthiness, which places an absolute non-delegable duty to provide a vessel, equipment, and appurtenances reasonably fit for their intended purposes.

32. Furthermore, under the General Maritime Law, Defendant owed the Pilot and all participants of the pilot transfer, including Mr. Cousins, a duty of reasonable care under the circumstances to ensure the safety of those involved in the pilot transfer in furtherance of the Vessel's business, as business invitees, or as others participating in the pilot transfer.

33. Defendants, one or all of them, through their Vessel, officers, crew members, representatives, or employees, breached the duties in the following ways:

    a. Failure to identify or mitigate the risks created by the pilot transfer arrangement on the M/V GLOVIS COMPANION, including the repair, maintenance, condition, design, and use of the stanchions;

    b. Failure to comply with mandatory rules, regulations, with regard to inspection, maintenance, and repairs to the pilot transfer system;

    c. Failure to properly inspect or maintain components of the pilot transfer system;

    d. Failure to ensure Vessel appurtenances, to include the pilot ladder stanchions, were fit for their intended purpose;

    e. Failure to ensure compliance with safe work procedures;

    f. Failure to establish safe procedures, plans, and instructions for pilot transfer operations;

    g. Failure to provide proper procedures, plans, and instructions for maintenance or life cycle replacement of pilot transfer equipment and components;

    h. Failure to appropriately train the officers and crew of the GLOVIS in proper procedures for pilot transfer operations or the maintenance and replacement of pilot transfer equipment and components;

    i. Failure to identify or replace incompatible, corroded, deteriorated, or unsuitable pilot transfer equipment;

    j. Failure to protect Plaintiff and others similarly situated against the hazardous condition as it existed at the time the Plaintiff suffered injury; and

    k. Failure to warn the Plaintiff or the Pilot of the hazardous condition as it existed at the time of Plaintiff's injury.

34. As a result of the incident, Plaintiff suffered serious injury which required surgery and lengthy and painful medical care.

35. The incident rendered him unable to work and caused injuries from which he shall never recover.

36. As a result of the incident, Plaintiff suffered and will continue to suffer serious permanent injuries, including disability with associated humiliation and embarrassment; Plaintiff

incurred doctor's expenses and expenses of other health care providers and will continue to do so in the future; Plaintiff suffered great pain and suffering, anxiety and mental distress, inconvenience, and the loss of quality of life, including loss of consortium, and will continue to do so in the future; Plaintiff suffered loss of wages due to the injury and will continue to do so in the future, and suffered loss of earning capacity.

37. Plaintiff's injury and damages were proximately caused by the negligence, as well as the negligence *per se*, of the Defendants, for which Defendants, one or all of them, jointly and severally, are responsible.

## SECOND CAUSE OF ACTION
## IN REM AGAINST VESSEL GLOVIS COMPANION

38. Plaintiff repeats, reiterates and realleges each allegation contained in paragraphs above as if fully set forth herein at length.

39. The General Maritime Law imposes liability against a vessel, *in rem*, if a vessel commits a maritime tort and provides a maritime lien against the offending vessel.

40. By reason of the allegations set out in this Complaint, Mr. Cousins has a maritime lien against the Vessel M/V GLOVIS COMPANION *in rem* for all damages resulting from injuries he suffered on June 30, 2018, as a result of the actions and inactions of M/V GLOVIS COMPANION, its owner, owner pro *hac vice*, and charterers.

41. Nothing in this Second Cause of Action is intended to waive any *in personam* claims Mr. Cousins may have against any non-vessel Defendant for the claims filed pursuant to the diversity jurisdiction of the Court.

## DAMAGES

Robert A. Cousins prays that the Court grant the following relief in a fair and reasonable amount based upon the evidence he will present to the Court:

42. Compensatory damages for past and future economic losses resulting from loss of wages and wage earning capacity, loss of benefits, and other related losses;

43. Compensatory damages for expenses of medical care and services, past and future;

44. Compensatory damages for disabilities, physical impairment, scarring and disfigurement;

45. Compensatory damages for pain and suffering, mental anguish and emotional distress;

46. Compensatory damages for inconvenience and loss of quality of life;

47. Award such other further relief that this Court deems just, proper, and equitable under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert A. Cousins prays that the Court grant the following relief:

A. Require NOCC Shipowning AS, Norwegian Car Carriers AS, Wallem Shipmanagement Limited, and Hyundai Glovis each to file a Verified Statement of Right of Interest;

B. With regard to the First Cause of Action, enter judgment against NOCC Shipowning AS, Norwegian Car Carriers AS, Wallem Shipmanagement Limited, and Hyundai Glovis, jointly and severally, *in personam*, for all damages Plaintiff proves, which Plaintiff claims far exceed the $75,000.00 jurisdictional limit;

  C. With regard to the Second Cause of Action, enter judgment against M/V GLOVIS COMPANION, her engines, tackle, equipment and appurtenances, *in rem* or *quasi in rem*, for all damages Plaintiff proves, which Plaintiff claims far exceed the $75,000.00 jurisdictional limit;;

  D. Recognize Robert A. Cousin's maritime lien against the M/V GLOVIS COMPANION and cause it to be enforced and paid with priority over all other claims and/or intervenors;

  E. Award all other money damages allowable under law, including pre-judgment interest and post-judgment interest available under the General Maritime Law, and the taxable costs of this proceeding; and

  F. Award such other further relief that this Court deems just, proper, and equitable under the circumstances.

## JURY DEMAND

**Plaintiff demands a jury on all triable issues.**

        **ROBERT A. COUSINS**

        /s/ Deborah C. Waters
By:_____
Deborah C. Waters, Esquire
Virginia State Bar No. 28913
L. Clayton Magee, Esquire
Virginia State Bar No. 95399
Waters Law Firm, P.C.
Town Point Center Building, Suite 600
150 Boush Street
Norfolk, VA 23510
Telephone: 757-446-1434
Facsimile: 757-446-1438
Email: dwaters@waterslawva.com
Email: cmagee@waterslawva.com

## VERIFICATION OF COMPLAINT

Deborah C. Waters, Attorney at Law, duly admitted to practice in the courts of the Commonwealth of Virginia, affirms as follows:

1. I am the attorney for the Plaintiff in this matter. I drafted the foregoing Complaint and, to the best of my knowledge, understanding and belief, know its contents to be true.

2. The source of my information and the grounds for my belief are based upon my own investigation, documents obtained from other counsel or parties, documents obtained from authorities, information obtained from experts and communications with Robert A. Cousins.

Dated: June 28, 2021

_____
Deborah C. Waters

Subscribed and sworn to before me this 28th day of June, 2021.

_____
Notary Public

My commission expires:

[Notary Seal: DEBRA SOULERIN GRIMM, COMMONWEALTH OF VIRGINIA, REGISTRATION NO. 212144, MY COMM. EXPIRES 07/31/2022, NOTARY PUBLIC]